UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWNTEL HOUSE,<br><br>                            Plaintiff,<br><br>   -against-<br><br>MILLENDO THERAPEUTICS, INC., LOUIS J. ARCUDI III, CAROL GALLAGHER, JAMES HINDMAN, JOHN P. HOWE III, GEOFF NICHOL, CAROLE NUECHTERLEIN, and JULIA C. OWENS,<br><br>                            Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Shawntel House ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Millendo Therapeutics, Inc. ("Millendo" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Millendo, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed reverse merger between the Company and Tempest Therapeutics, Inc. ("Tempest").

2. On March 29, 2021, Millendo entered into an Agreement and Plan of Merger (the

1

"Merger Agreement"), pursuant to which Mars Merger Corp., a wholly owned subsidiary of Millendo, will merge with and into Tempest, with Tempest surviving as a wholly owned subsidiary of Millendo (the "Proposed Transaction").

3.  Under the terms of the Merger Agreement, shareholders of Tempest will become the majority owners of Millendo's outstanding common stock upon the closing of the merger. It is expected that the former Tempest shareholders will hold approximately 81.5% of the outstanding shares of the combined company, and stockholders of Millendo will retain the remaining equity ownership of approximately 18.5% (the "Exchange Ratio").

4.  On April 13, 2021, in order to convince Millendo's public common stockholders to vote in favor of the merger, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement contains materially misleading statements and omissions concerning: (i) the financial projections for both companies; (ii) the valuation analyses conducted by SVB Leerink LLC ("SVB Leerink"); and (iii) conflicts of interest faced by SVB Leerink.

5.  The shareholder vote will be scheduled in the coming weeks, as the Proposed Transaction is expected to close in the first half of 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

6.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to

Millendo's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's stock trades on the Nasdaq which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Defendant Millendo Therapeutics, Inc. is a Delaware corporation with its principal executive offices located at 110 Miller Avenue, Suite 100, Ann Arbor, MI, 48104. The Company's common stock trades on the Nasdaq under the ticker symbol "MLND".

12. Individual Defendant Louis J. Arcudi III is, and has been at all relevant times, the Chief Executive Officer and director of Millendo.

13. Individual Defendant Carol Gallagher is, and has been at all relevant times, a director of Millendo.

14. Individual Defendant James Hindman is, and has been at all relevant times, a director of Millendo.

15. Individual Defendant John P. Howe III is, and has been at all relevant times, a director of Millendo.

16. Individual Defendant Geoff Nichol is, and has been at all relevant times, a director of Millendo.

17. Individual Defendant Carole Nuechterlein is, and has been at all relevant times, a director of Millendo.

18. Individual Defendant Julia C. Owens is, and has been at all relevant times, a director of Millendo.

19. The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Individual Defendants," and together with Millendo, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Proposed Transaction**

20. Millendo is a biopharmaceutical company previously primarily focused on

developing novel treatments for endocrine diseases where current therapies do not exist or are insufficient. Millendo seeks to create distinct and transformative treatments where there is a significant unmet medical need.

21. Tempest Therapeutics is a clinical-stage oncology company advancing small molecules that combine both targeted and immune-mediated mechanisms with the potential to treat a wide range of tumors. The company's two novel clinical programs are TPST-1495 and TPST-1120, antagonists of EP2/EP4 and PPARα, respectively. Both TPST-1495 and TPST-1120 are advancing through Phase 1 studies designed to study both agents as monotherapies and in combination with other approved agents. Tempest is also developing an inhibitor of TREX-1, a double-stranded DNA exonuclease that is designed to control activation of the cGAS/STING pathway, which is an innate immune response pathway that induces the production of IFN-β, a cytokine that is well-established to trigger the development of anti-tumor immunity.

22. On March 29, 2021, Millendo authorized the announcement of the Proposed Transaction. The press release stated in relevant part as follows:

**Tempest and Millendo Announce Proposed Merger Agreement**

SOUTH SAN FRANCISCO, Calif. & ANN ARBOR, Mich.--(BUSINESS WIRE)--Tempest Therapeutics, Inc. ("Tempest"), a privately-held clinical-stage oncology company developing potentially first-in-class therapeutics that combine both targeted and immune-mediated mechanisms, and Millendo Therapeutics, Inc. (Nasdaq: MLND) ("Millendo"), announced today that they have entered into a definitive agreement under which Millendo will merge with Tempest in an all-stock transaction. The combined company will focus on advancing Tempest's oncology pipeline of small molecule therapeutics that have the potential to address a wide range of tumors. Upon shareholder approval, the combined company is expected to operate under the name Tempest Therapeutics and trade on the Nasdaq Capital Market under the ticker symbol TPST.

In support of the merger, Tempest has secured commitments from a premier syndicate of healthcare investors comprised of Versant Ventures, Rock Springs Capital, F-Prime Capital, Monashee Investment Management, Quan Capital, Lyfe Capital, Maven Investment Partners US, Lilly Asia Ventures and Eight Roads

Ventures for a $30 million PIPE financing that is expected to close concurrent with the completion of the merger. Together with the cash expected from both companies at closing, the net proceeds of the merger and financing are expected to fund the further development of Tempest's three oncology programs and operate the company into early 2023. The financing and merger are expected to close in the first half of 2021.

"We are very pleased to announce this proposed merger with Millendo Therapeutics, which will facilitate the advancement of our broad pipeline of targeted oncology programs, including TPST-1495 and TPST-1120, which are both progressing in the clinic with encouraging early signs of clinical benefit," said Tom Dubensky, Ph.D., chief executive officer of Tempest. "Together with our recently announced clinical collaboration with Roche to investigate TPST-1120 in a randomized frontline hepatocellular carcinoma study, this has been a highly productive quarter for Tempest that sets the stage for additional potential catalysts from our proprietary oncology programs. The transition of Tempest to a public company enhances our ability to fund these potentially important product candidates, as well as consider additional programs with exciting new targets."

Tempest's oncology pipeline is led by two clinical programs, TPST-1495 and TPST-1120, with broad potential across multiple tumor types. TPST-1495 is an antagonist selective for two receptors in the prostaglandin (PGE2) pathway, EP2 and EP4, which promote both tumor growth and the proliferation of suppressive immune cell populations. Tempest is currently evaluating the safety, tolerability, pharmacokinetics, pharmacodynamics, and preliminary anti-tumor activity of TPST-1495 in a multicenter Phase 1a/1b dose and schedule optimization study in patients with advanced solid tumors, with a focus on known prostaglandin-driven tumors such as colorectal cancer, lung adenocarcinoma and urothelial cancer. Tempest expects to report topline data from this study prior to the end of 2021, as well as data from planned monotherapy dose expansion and combination studies in 2022. TPST-1120 is designed to be a selective antagonist of proliferator-activated receptor alpha (PPARα) which is a transcription factor that regulates the expression of target genes that promote angiogenesis and enable a cellular metabolic pathway known as fatty acid oxidation. TPST-1120 has completed monotherapy dose escalation and is progressing through a combination dose escalation study with nivolumab. This summer, Tempest expects F. Hoffmann-La Roche Ltd to initiate a global, randomized Phase 1b/2 clinical study in combination with the standard-of-care first-line regimen of atezolizumab and bevacizumab in patients with advanced or metastatic HCC not previously treated with systemic therapy, pursuant to a recently announced collaboration between the companies. Tempest expects to report topline data from this study by year-end 2022.

"Millendo Therapeutics' strategic review was a thorough and thoughtful process. We believe we have found a partner that offers not only the greatest value for our existing shareholders but also promising targeted oncology product candidates for patients living with cancer," said Louis Arcudi, chief executive officer of Millendo.

**About the Proposed Merger**

Millendo stockholders are expected to own approximately 18.5% of the combined company and pre-merger Tempest stockholders will own approximately 81.5% of the combined company. The percentage of the combined company that Millendo's stockholders will own as of the close of the transaction is subject to adjustment based on the amount of Millendo's net cash at the closing date.

Upon closing of the transaction, Millendo will be renamed Tempest Therapeutics, Inc. and will be headquartered in South San Francisco, CA. Stephen Brady and Tom Dubensky, Ph.D., will serve as chief executive officer and president, respectively, of the combined company. The merger agreement provides that the Board of Directors of the combined company will be comprised of seven members. The merger agreement has been approved by the Board of Directors of each company, and the transaction is expected to close in the first half of 2021, subject to approvals by the stockholders of each company, the effectiveness of a registration statement filed with the U.S. Securities and Exchange Commission to register the shares of Millendo common stock to be issued in connection with the merger, the completion of a PIPE financing, and other customary closing conditions.

SVB Leerink is serving as the exclusive financial advisor to Millendo and WilmerHale is serving as legal counsel. Piper Sandler is serving as the exclusive financial advisor to Tempest and Sidley Austin is serving as legal counsel.

23.     Far from maximizing stockholder value, the Proposed Transaction will incur significant transaction costs and significantly dilute stockholders' equity ownership. The merger comes at an extraordinarily inopportune time, creates substantial risks for the public common stockholders, and primarily benefits Tempest. Indeed, "Tempest has a history of operating losses, and Tempest may not achieve or sustain profitability. Tempest anticipates that it will continue to incur losses for the foreseeable future." Reg. Stmt. at 16. Moreover, as stated in the Registration Statement:

> Tempest and its auditors have substantial doubt about Tempest's ability to continue as a going concern, which may hinder its ability to obtain further financing.

*Id.* And further:

> As of December 31, 2020, Tempest had an accumulated deficit of $71.8 million. Substantially all of Tempest's operating losses have resulted from costs incurred in

7

>connection with Tempest's research and development programs and from general and administrative costs associated with Tempest's operations. Tempest expects to continue to incur significant expenses and operating losses over the next several years and for the foreseeable future as Tempest intends to continue to conduct research and development, clinical testing, regulatory compliance activities, manufacturing activities, and, if any of Tempest's product candidates is approved, sales and marketing activities that, together with anticipated general and administrative expenses, will likely result in Tempest incurring significant losses for the foreseeable future. Tempest's prior losses, combined with expected future losses, have had and will continue to have an adverse effect on Tempest's stockholders' equity and working capital.

*Id* at 52. Despite these substantial risks and facing years of potential losses, following the consummation of the merger, Tempest will own approximately ***81.5%*** of the post-merger company. The Proposed Transaction is unfair for minority stockholders.

24.     Nor is this merger in any way, shape, or form, fiscally responsible at a time when both companies are experiencing significant cash burn. As disclosed on page 298 the Registration Statement:

>[For Tempest, the] preliminary estimated transaction costs [are] $3.3 million in connection with the Merger, [and consist of expenses] such as adviser fees, legal, and accounting expenses that are expected to be incurred by Tempest as an increase in accrued liabilities and a reduction to additional paid-in capital in the unaudited proforma condensed combined balance sheet.
>
>[For Millendo, the] preliminary estimated transaction costs [are] $5.5 million in connection with the Merger, [and consist of expenses] such as adviser fees, legal, directors and officers liability insurance, and accounting expenses, that are expected to be incurred by Millendo as an increase in accrued liabilities and accumulated deficit in the unaudited proforma condensed combined balance sheet.

25.     Accordingly, Millendo is burning millions of dollars to consummate a merger with an entity which also faces significant liquidity concerns. And "Tempest expects that it will need to raise additional funding before Tempest can expect to become profitable from any potential future sales of Tempest's product candidates. This additional financing may not be available on acceptable terms or at all. Failure to obtain this necessary capital when needed may force Tempest

to delay, limit or terminate its product development efforts or other operations." *Id* at 16. Accordingly, not only are stockholders receiving a massively diluted stake in the post-merger entity, but the entire decision is also fiscally unsound for both parties.

26. Piggybacking off the uncertainty of pandemic, the Proposed Transaction may inordinately compensate Tempest and reward the Individual Defendants, all at the expense of the Company's common stockholders. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Transaction.

**B. The Registration Statement Omits Certain Material Information**

27. On April 13, 2021, Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information concerning the respective and post-merger companies' ownership structures, conflicts of interest, and fundamental valuation information. This information is necessary for Millendo's stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

28. *First*, the Registration Statement omits all Millendo's and Tempest's financial projections, including its cash flow projections and projected revenues. This omission is especially egregious as Tempest is a private company, and so stockholders have no means to evaluate the adequacy of the Exchange Ratio compared to their current holdings in the Company (which trades

9

on a public market). Stockholders are instead being asked to dilute their position in the Company, and to accept a new stake in a pro forma entity containing Tempest. Indeed, without providing any projections, Company stockholders will receive a misleading picture about the projected returns from their new holdings in Tempest.

29. Management has meaningful insight into the Company's financial future that the market does not. By example, if projections for Millendo for 2021 were to reveal a tremendous increase in cash flows, stockholders would be more apt to vote against the merger, and inversely the same holds true. By choosing to withhold the Company's projections, the Board has chosen to blindfold stockholders to fundamental valuation information, and instead, left stockholders out in the dark with only market data for guidance. This is not a game of poker where a player must conceal his unexposed cards, the object of a Registration Statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed—and so must be disclosed.

30. *Second*, the Registration Statement omits material information regarding the financial analyses performed by the Company's financial advisor, SVB Leerink.

31. With respect to its *Selected Biopharma Initial Public Offering Step-Ups* analysis, the Registration Statement fails to disclose the individual inputs, multiples and assumptions for the companies observed in the analysis, as well as the reasons for selecting each of the companies observed. Further, the Registration Statement fails to identify why Tempest's equity value was inclusive of $30,000,000 in committed concurrent financing by new and existing investors, when that financing will apply to both Tempest and Millendo should the Proposed Transaction be consummated.

32. Similarly, with respect to SVB Leerink's *Selected Biopharma Initial Public*

*Offerings* analysis, the Registration Statement fails to disclose the individual inputs, multiples and assumptions for the companies observed in the analysis, as well as the reasons for selecting each of the companies observed.

33. Lastly, with respect to SVB Leerink's *Selected Biopharma Public Companies* analysis, the Registration Statement fails to disclose the individual inputs, multiples and assumptions for the companies observed in the analysis, as well as the reasons for selecting each of the companies observed.

34. Fairness opinions are fundamental to the M&A process and is ultimately what stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost important that stockholders have analyses available—such as those omitted here—to determine whether those metrics are reasonable, or whether they were unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical. As one highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight

> assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to the above information, and the omission of these metrics makes each financial analysis identified inherently misleading.

35. ***Third***, the Registration Statement omits material information regarding SVB Leerink's conflicts of interest in the Proposed Transaction. The Registration Statement fails to disclose whether SVB Leerink has performed past services for Millendo and/or Tempest and their affiliates, and if so, the timing and nature of the services and the amount of compensation received by SVB Leerink for providing the services. Item 1015 requires the disclosure of the above information:

> Describe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates.

17 C.F.R. § 229.1015(b)(4). Further, the Registration Statement fails to identify what compensation will be received by SVB Leerink, if any, for its role in the PIPE financing. The failure to fully disclose SVB Leerink's historical relationships with the involved parties and the compensation they received or expect to receive are *per se* disclosure violations warranting the relief sought.

36. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus

threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(a) of the Exchange Act)**

37.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.    The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41.    Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement,

which fails to provide critical information regarding the companies' ownership structures, financial projections, SVB Leerink's valuation analyses and conflicts of interest.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes

negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

45. Millendo is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

46. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Millendo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Millendo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

57. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public stockholders.

58. The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.  Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.  Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: June 7, 2021 | **MONTEVERDE & ASSOCIATES PC** |
| **OF COUNSEL** | */s/ Juan E. Monteverde* |
| | Juan E. Monteverde (JM-8169) |
| **ADEMI LLP** | The Empire State Building |
| Guri Ademi | 350 Fifth Avenue, Suite 4405 |
| Jesse Fruchter | New York, NY 10118 |
| 3620 East Layton Avenue | Tel: (212) 971-1341 |
| Cudahy, Wisconsin 53110 | Fax: (212) 202-7880 |
| Tel: (414) 482-8000 | Email: jmonteverde@montSeverdelaw.com |
| Fax: (414) 482-8001 | |
| Email: gademi@ademilaw.com | *Attorneys for Plaintiff* |
|   jfruchter@ademilaw.com | |
| *Attorneys for Plaintiff* | |